## SOPHIA MAUS TOWNE v. ST. LUKE'S HOSPITAL OF ST. PAUL.[1]

October 21, 1927.

No. 26,101.

**Evidence insufficient to prove negligence of defendant.**

Evidence considered and *held* not sufficient to show that defendant was guilty of negligence in maintaining a quarantine in its hospital, or that it was guilty of any negligence which was the proximate cause of plaintiff's contracting scarlet fever, as charged in the complaint.

Hospitals, 30 C. J. p. 470 n. 97.

Action in the district court for Ramsey county to recover damages for an alleged failure to maintain proper quarantine regulations. From an order, Richard D. O'Brien, J., denying her motion for a new trial, plaintiff appealed. Affirmed.

*Mead & Bryngelson, A. D. Evans,* and *Beth Bryngelson,* for appellant.

*Doherty, Rumble, Bunn & Butler* and *Lightner & Young,* for respondent.

QUINN, J.

Appeal from an order denying the plaintiff's motion for a new trial made after the trial court had dismissed the action at the close of plaintiff's evidence.

The respondent is a Minnesota corporation. It operates a general hospital in the city of St. Paul and in connection therewith it conducts a nurses' training school. Both the regular and student nurses live in a building separate from the hospital.

In September, 1922, the plaintiff was employed by respondent as a servant and student nurse. She was a high school graduate 21 years of age. Such student nurses were required to attend lectures and classes daily and to do general work about the hospital. She

[1]Reported in 216 N. W. 221.

had been a student nurse for about 18 months and had regularly attended her classes.

Frances Greenwalt, one of the regular hospital nurses and, at the time, acting as hospital pharmacist, on January 24, 1924, became ill. She was placed in room 113 on the first floor, supposedly suffering from sinus trouble. She was running a temperature, appeared to be quite sick, and had no appetite. She had no rash and apparently no sore throat. During this time a doctor was attending her. On January 28, another doctor diagnosed her case as scarlet fever. The city health department was at once notified and the patient was immediately isolated. She employed a special nurse and no one else was thereafter allowed to enter her room. The nurse slept, ate and lived in the room with the patient. Meals, water, supplies, etc. for both were left at the door of the room by regular and student nurses.

Prior to the time of the diagnosis, the nurses in attendance, including plaintiff and Palma Sockness, her roommate, were permitted to enter the room for the purpose of taking the patient's temperature, bathing her and changing bed linen. About 20 of these girls roomed on the same floor, ate in the same dining room, attended the same classes and associated together in a general way. Plaintiff's roommate was on duty on the first floor during the entire illness of Miss Greenwalt, up to February 8. Her duties, prior to the diagnosis, required her to enter the patient's room, change the bed linen, take the temperature of and bathe the patient, and attend to such other matters as might seem proper.

From January 23 until she left the hospital, the plaintiff was on night duty—from 7 p. m. until 7 a. m.—and during the hours from 2 until 3:30 a. m. she relieved the night nurse on the first floor. At 8:30 a. m. February 8, she left the hospital and went by train to Tracy, arriving there at 4:30 p. m. After leaving the train, she was driven to the home of her sister on a farm some two or three miles out, had supper and attended a party. At midnight she felt unwell and at 10 o'clock the following morning called a doctor, who diagnosed her ailment as scarlet fever. She was immediately

isolated in one of the rooms of her sister's home, and her sister stayed in the room with her continuously until March 2, 1924, on which day they went by automobile to Tracy, where plaintiff was examined by her doctor and was told by him that she was entirely free of scarlet fever. She had disinfected herself as directed by her doctor.

The appellant bases her right to recover squarely upon the charge that respondent, subsequent to the diagnosis made on January 28, failed and neglected to maintain and enforce proper quarantine regulations. This brings us to a consideration of whether the proofs are such as to justify a finding of actionable negligence against the respondent.

The evidence is uncontroverted that Miss Greenwalt was taken ill on January 24; that she remained under the care of a physician until the 28th, when another physician diagnosed her ailment as scarlet fever; that respondent immediately informed the city health department; that at that time there were 281 cases of scarlet fever in the city of St. Paul; that the patient was isolated at once, employed a special nurse who remained constantly with her until after the appellant had left the building; that prior to January 28 the duties of the appellant and her roommate required them to enter the Greenwalt room, change the linen, take the patient's temperature, bathe her, and do such other things as might be necessary.

There is no claim that the respondent knew of the existence of scarlet fever in its building prior to January 28 or that it was negligent in any respect as to the matters under consideration prior to that time. Taking into consideration all of the surrounding circumstances as shown by the evidence, it is quite probable that appellant contracted the disease with which she was afflicted prior to the time of the making of the diagnosis. To make a finding that she contracted the disease subsequent to that time would be mere guess work. Assuming that the respondent might have been guilty of negligence in maintaining a quarantine subsequent to that date, the evidence entirely fails to show that such negligence, if any, was the proximate cause of the plaintiff's illness.

We find no reversible error in the rulings on evidence bearing upon the issue of negligence. The dismissal was proper.

Affirmed.